May it please the Court, Clinton Ehrlich for the Appellant Fred Dardashti. I'm in the unusual position this morning of asking this Court to overturn a judgment in favor of my client, but that's necessary because the District Court made three errors that to which he was entitled. The first of those errors was the grant of partial summary judgment under the Genuine Dispute Doctrine. That was error because the dispute in this case was anything but genuine. The exclusion issue here. If I might, Counsel, could you address whether you could have a sudden and accidental discharge or overflow of water that results in a continuous or repeated leakage or seepage? So, in other words, the initiating event is sudden and accidental, but what it results in is something that's occurring continuously repeatedly over time and, therefore, is excluded from coverage. Right. I understand the argument that Your Honor is making. I think that there are cases where there's seepage or leakage and it's obvious that those sort of leaks are supposed to fall within the scope of this exclusion and that lawyers have attempted to make creative arguments about the idea that, well, there was some point at which it was sudden. There was a moment in time where it went from not leaking to leaking, and then they've attempted to spin that as saying, well, that means it was sudden and so it's covered. And I certainly am not trying to advance that kind of argument here. I think that if sudden is used in that sense, to refer to the idea that there's a point at which the leak begins, then certainly you could have a sudden discharge that was nevertheless subject to the exclusion. I think that when the trial court here used the concept of sudden versus gradual and used it in a way that's consistent with State Farm's own use of it in the course of adjusting the claim, what was being referenced was the distinction between a sudden leak in the sense that the volume of water that's being discharged is very large and so it's discovered quickly. And so in this particular version of the exclusion, there isn't a time limit. It doesn't say that the exclusion applies if the leak has gone on, for example, more than two months. But State Farm cites examples in its briefing of versions of the exclusion that do contain that language. And I think that in a certain sense, that's the prototypical version of the exclusion. Can you help me with this, counsel? If you look at the exclusion in the policy, it's hard for me to understand why State Farm actually ended up saying, okay, there's some liability here. But you started off by claiming there was bad faith. What's your best argument, given all that occurred, the back and forth with the insurance company, the inspectors, the attorneys, et cetera, that this in any way qualifies as a bad faith claim under California law? Well, in order to get to bad faith, I think we have to pin down the meaning of the exclusion because my argument about it being bad faith is premised... With respect, I don't think that's right. I mean, it's either covered or it's not covered. If it's not covered at all, then you never get to that. But let's assume for a moment that it is. You've claimed bad faith. We all know what bad faith is and you've basically the insurance company just shines you on, you don't do anything. But in this case, if I understand the record correctly, there was a lot of back and forth between the insurance company and your client. There were people that came in and inspected and so on and so on. There were disagreements about what the cost was. But how do you get to bad faith? What's your best case that suggests that the facts evident in this case qualifies as bad faith and that the district judge erred in finding there was none? I think that my strongest argument for bad faith concerns the representations that were made about the Forex forensic report. That's bad faith? Yes, I believe it's not... What case would you cite that suggests that what was said about the forensic report qualifies as bad faith? I think that virtually every case about bad faith from Wilson to Amadeo shows that companies have to act reasonably. And if they misrepresent the content of a report, that that's prototypical bad faith. Well, let's just say I don't see it that way. But help me with this then. On what basis would you request punitive damages under California law? I believe that State Farm misrepresented the content of the report. In their supplemental coverage denial letter, they said that... Misrepresented a self-evident report. Anybody can read it. The district court can read it. So on your side, they said it was something different than it was. And you think that qualifies as bad faith and qualifying for punitive damages under California law? I think they would qualify as fraud, Your Honor. And I want to clarify, it's not just the content of the report. It's also the claim file, which contains a transcription of a and staining on the outside of the pipe indicates that it was a sudden failure rather than a gradual failure. And the reason I was so focused on that, Your Honor, is that in the course of adjusting the claim, State Farm's adjusters and its experts treated that as the critical distinction. That's why they represented to my client that Forex Forensics needed to do the testing. Well, is that why they ultimately agreed that there was some damages due? Yes, Your Honor. The truth came out during this litigation when they had to produce the claim file. And so we got a copy of the report, and we got a copy of the transcripts of that voicemail. I guess what I struggle with, as you well know, in litigation, people take the same facts and they argue it differently. There's never been a lawyer born that can't put a spin on something. But that's just the nature of the litigation process. In this case, we went back and forth, back and forth. Ultimately, State Farm, despite what was arguably an exclusion from the policy, said, okay, we're going to admit there's some liability here, just a question of the damages. And that's what the court ended up doing. What went wrong here from your perspective? Well, Your Honor, I think that you have to evaluate the exclusion as if the critical distinction is sudden versus gradual, because that was how the district court construed it, and then State Farm stipulated to coverage, and they haven't filed a cross-appeal disputing how the language was construed. And so if we construe the language that way, so that that's the critical distinction, then State Farm misrepresented the evidence about whether the leak occurred suddenly to my client. There was a disparity in access to information. State Farm had access to the report and claimed two different things about the report. First, they said that expert examination had determined that the leak was subject to the exclusion. And then they said that specifically that Forex Forensics had been unable to determine how the leak happened. Those things were not true. Well, they had experts that said that, though, did they not? No, they never had an expert who said that the leak occurred. They had internal people that said that. Jeff Natale, their adjuster, looked at the Forex Forensics report. He testified at his trial that he had retained Forex Forensics, determined that the leak occurred suddenly, and that he himself as an adjuster overrode them and said that it occurred gradually. That, I mean, the Amadeo case holds that out, the idea of looking at the opinion of an expert and then, without any justification, overruling that opinion through the fiat of an adjuster as a prototypical example of bad faith. And I think that the same is true here, that State Farm talks a lot about the things that they did, but none of the things that they found pointed to this being an exclusion that was subject to a loss that was subject to the exclusion. Counsel, I wonder if we might move to the jury instruction just for a moment and set to one side the standard of review. We'll get back to that. But as I read the instruction that was given, the district court addressed uniform appearance requirement, the reasonable value of repairs to the damaged property, the contents handling required, and additional living expenses. What was it that was not sufficiently covered then, recognizing that you're using  Yes, Your Honor. What really wasn't covered in that? I mean, the jury awarded you substantially more than what State Farm said should have been recovered. Yes, Your Honor. What wasn't covered was the damage that occurred to portions of the house, like the baseboards, that would have to be damaged in order to remove the floor. And so our expert, Michael Nittibitti, testified that a significant portion of his estimate of $600,000 for replacing the floor was the damage that occurred to the estimate and said that it was inflated and mocked the concept, actually, of including physical damage, saying, quote, I wouldn't hire a contractor if he was going to bump into things and destroy them. And so it's that specific element of the damages, the idea that the consequential physical damages to the rest of the home are covered above and beyond the cost of the materials and the labor that have to be used to put in the floor. And as far as the standard of review, I would agree with you that what occurred prior to the reading of the instructions is confusing to me as a district judge. But after the instructions were given, you did not object. And you had an opportunity to object. So wouldn't the standard here be plain error? I don't believe so, Your Honor, because when you say that what happened was confusing, that there's... Well, in the sense that it sounded like the district judge was going to give the instruction number one. You thought that's what was going to happen until the jury was charged. No, I don't believe that that's accurate, Your Honor. The district judge called the instruction gibberish and indicated that he was not going to give it. So we knew that it was going to be a different instruction before the district court gave that. Didn't trial counsel agree to the instruction as they were having an exchange with the district judge? The district judge was saying how the instruction was going to be changed. And then there's this colloquy. And the attorney says, yes, that's correct. Oh, yes, it's covered in this other instruction. It seemed like there was not only a lack of an objection, but actually an agreement with the instruction. I don't believe that there was... I'm sorry, Your Honor. I don't believe that there was an agreement. The trial counsel didn't see the instruction until it was read to the jury. And so counsel certainly didn't agree to the version of the instruction that the trial court gave. So the transcript is what it is. So I guess we can just look at that again and decide if that's what actually happened. The other issue I have is I just pulled up the Forex Forensics report, and it says that the leak was most likely cause of the leak was erosion and corrosion, which seems like a gradual process, not something that happens suddenly. Eventually it fails, but that's what the Forex report says. The initial... It's not... The leak itself is not gradual. So the process that happens in advance may be gradual, but then as soon as the leak happens, it isn't a slow dribble that then grows. It's immediately a high-pressure leak. And I would emphasize that their adjuster, Ms. Urquilla, saw the video of the leak, saw the water shooting out of it, and said that she didn't consider that to be CRSL, continuous or repeated seepage or leakage. And so even viewing the video evidence that was taken, she said that wasn't the case. And then Forex Forensics, in the voicemail that they left, which was transcribed, they said that it wasn't something that happened over time. They characterized it as a sudden failure. I would save the balance of my time, Your Honor. Very well. Okay. Let's hear now from State Farms Council, Ms. Orr. Good morning, Your Honors. May it please the Court. Cheryl Orr, Music Peeler and Garrett, on behalf of Pele State Farm. Inflammatory rhetoric, unsupported by evidence, does not create a genuine dispute to avoid summary judgment. And that's what we've heard here, and that's what was presented at the time of the motion for summary judgment. And I apologize. I'm losing my voice. I guess I've practiced too long. You're probably not the only person in Southern California with the respiratory problem. The Forex report, dated March 26, 2021, as Your Honor pointed out, opined that the cause of the failure was a defect or erosion-corrosion. The report never used the word sudden, as Dardashti claims. The report never favored coverage, just the opposite. And State Farm did not conceal the report. Dardashti's counsel knew about the testing of the pipe. He delivered the pipe to Forex. He was present. That appears at 2 ER 204, 205, and 250 of the record. He never asked for the report. He knew that the testing had taken place. He never asked for it. State Farm was actually not apprised of the testing and didn't get to go to the testing the day it occurred. And ultimately, the report did not opine on the cause of the resulting damage and whether that was a result of continuous or repeated seepage or leakage of water. Jeff Natale didn't ignore any conclusions in that report that favored coverage. We set that out at the State Farm brief at pages 40 to 41 in all the evidence, including Natale's deposition, which appears at 2 ER 95 to 96. This is not a situation like in Wilson, where the examiner ignored evidence that favored And Your Honor's question about this sudden and accidental overflow that results in continuous and repeated leakage or seepage is the crux of this case. The problem here is that, as noted in the Sokol and Brown cases, whether the pinhole leak gives way suddenly or gradually is not the question. It's the application of a CRSL exclusion which in turns on whether the damage was caused by a, quote, continuous or repeated seepage or leakage of water, end quote, as opposed to a sudden burst of water. And the discussion in the Brown and the Sokol cases talks about this metaphysical moment, that there is suddenly a leak. There wasn't one before, then there's a sudden leak. But the language of the CRSL exclusion applies, quote, regardless of whether the event occurs suddenly or gradually, end quote. So if the event was a sudden pinhole leak or a gradual erosion of the pipe which finally gave way, it doesn't matter. The focus is on the discharge of the water and whether it was continuous or repeated before it was discovered. And I urge the Court to look at Exhibit H, which was submitted by the Dardashtis, which was a video showing the spraying of the water was unknown to the Dardashtis until Mr. Dardashti discovered or his housekeeper discovered the dripping of water from the ceiling. And the evidence of a CRSL condition was compelling. I thought there was something in the record about mold being discovered about a allowing water to escape into the walls or the ceiling or the floor for a continuous period of time rather than what they allege, which was it was a powerful spray of water that came through the ceiling immediately. The presence or absence of mold is an indicia of CRSL condition, but it's not dispositive. And the speculation that it developed because State Farm didn't allow any remediation is just that, speculation. In opposition to the motion for summary judgment, there wasn't no expert offered by Dardashti to say that this was a condition, that mold should not have developed because it was a sudden leak. That was not offered. No testimony, expert testimony was offered with respect to the development of mold. As noted by Mr. Notale, there was a problem with the date on the pictures of the remediation from ServiceMaster because ServiceMaster came in on the day after the leak was discovered, on 2-24, and they tore off the drywall and discovered the leak on that day. They also took off drywall subsequently. And so there is a dispute because there are notes in the file that before 3-31, the pictures that show the mold, those pictures show mold that developed well before 3-31 when ServiceMaster was removing the drywall. So there is a question, and that's why Mr. Notale said the photographs and the date of the photographs suggest that there was mold at that property well before the first evidence of mold was mentioned by Mr. Golshani on 3-31. Let me ask you this. My understanding of State Farm's position is, hey, look, every report we had, they got. Every inspection we did, they were there. They offered no expert testimony about the mold. Seems to me that under your policy, you would probably not have any liability at all. And yet, State Farm agreed there was some liability and decided to go to trial on the amount of the damages. Why did you agree that you had liability in light of your position respecting the reports, inspection, and the mold? Well, we just decided at the point that there was no bad faith liability, we had secured a determination on the MSJ that there was no bad faith, there was no punitive damages. We decided to streamline the case for trial just on the issue of the value of the loss. So in other words, from your perspective, while you probably could have claimed there was no coverage, you thought, hey, let's, the cost of this versus the cost of the other, it makes more sense to try it. Is that basically what it was? Correct, Your Honor. It's a business decision to go to trial on just a value issue instead of trying to dispute coverage and then have them take a second shot at the apple. You go all the way down that road, and then you go to the other issues on appeal to say, oh, there was bad faith all along. I think that the genuine dispute doctrine was applied correctly here because the idea is that, again, you can't just have argument unsupported by evidence. You have to come forward with something that shows that there was an unreasonable investigation, there was a conscious disregard of rights. And I also take issue that their best bad faith case has any support in the record whatsoever. State Farm never falsely claimed that the forensics group could not determine how the leak occurred. That is false. And they make this claim in the ALB at page 36, and they make the claim in their reply brief, and they cite to 2 ER 243 and 253. Neither of those letters support the claim that there was a misrepresentation of the 4X report. The June 15, 2021 denial letter stated, the predominant cause of the plumbing failure was wear, tear, or deterioration. That's exactly what the 4X report determined. Counsel, if I might shift over to the appraisal issue for a moment. Sure. What could the other side have done other than request an appraisal? Are you saying that there should have been a formal petition filed? Well, first of all, the policy requires that the request be in writing. They had the opportunity back in 2021, when they first received the April 2021 letter, the claims notes indicate that Mr. Golshani, I believe it's at 2 ER 196, Mr. Golshani mentioned to Ms. Urquia that he intended to raise the appraisal issue. He never raised the appraisal issue. They never raised the appraisal issue during the claims process. When they filed suit, they chose to sue both in the complaint, and first amended complaint on both the issue of coverage and the issue of damages. They never alleged that if we prevail on the issue of coverage, we wish to go to an appraisal. The court was faced with the position that they were the day before trial, appearing at the final status conference, and all of a sudden, up pops, oh, we want to go to appraisal, your honor. This court treated it as a waiver issue. The court rightly noted that it's like an agreement to arbitrate, and agreements to arbitrate can be waived if you litigate long enough. And in this case, they litigated for nine months. They were on the eve of trial. They already had a week's notice that State Farm had stipulated on the record that there was going to be no issue, but the issue of value tried at the court trial or the jury trial. And not only had they noted that at the final, or I'm sorry, that was the status conference before the final status conference because it continued, but State Farm also filed a notice of abandonment of all of its affirmative defenses on 1129. That appears in the docket at number 78. That specific document said we are waiving all of our right to proceed on all of our affirmative defenses, and the only issue that's going to be presented to the jury is waiver. I follow your argument. Now, one other argument on the jury instruction, baseboards, is in fact there a deficiency in the coverage of the district court instruction? No. The jury instruction accurately addressed in a fair manner both elements of the insurance regulation. It stated that the court noted that it was gibberish and decided that it was too verbose, too technical to use and might confuse the jury. So the court said the jury is to award the value of any damages. Any damages include direct damages as well as consequential property damage that would be required. And the second element was given verbatim from the regulation. That is the reasonably uniform appearance. And this argument relating to the jury instruction that we were deprived of arguing consequential property damage is a red herring because all of the argument, as you note in the record, indicates that they were concerned about the reasonable uniform appearance. And that's where they got to the point that they could seek to recover not only all of the finished replacements on the first floor but the stairs and the carpeting and the wood on the second floor and all the finishes on the second floor. So only based upon the reasonable uniform appearance, the court said, okay, I'll give you that part of the instruction, but this other part of the instruction is gibberish and I'm going to make it more digestible for the jury. And he did so. So both aspects of the insurance regulation were fairly and accurately covered. And, in fact, the main point that Dardashti wanted to focus on, reasonable uniform appearance, was, in fact, given verbatim from the insurance regulation. So there was no error in the instruction, and the court doesn't have to use the precise words that were proposed by Dardashti. Was the jury instruction that was ultimately used part of a model instruction, one that would be commonly used in this type of litigation? No. What the court did is the court just put together a normal damages instruction and then he did modify it to add the language on the second part of the insurance regulation to directly address this reasonable uniform appearance because that was, in all of the discussion on the jury instructions, that was the point that the plaintiffs were making, that they wanted, I'm sorry, the plaintiff was making, that plaintiff's counsel wanted that reasonable uniform appearance because that's the yarn, the ball of yarn that gets them downstairs in full and upstairs as well in terms of the cost of repair estimate. So from your perspective, they had an opportunity to present that, the jury instructions included that, and the jury didn't buy it. Right. And the cost of repair estimate, all of his testimony was about reasonable uniform appearance. None of the language in his cost of repair estimate, which we included in the supplemental excerpt of record, includes any language about consequential property damage. All he was talking about was reasonable uniform appearance. He talked about that on direct. He talked about that on cross. And nothing about consequential property damage was included in his report. So this is an argument that was made to suit the way that the jury instruction was created by the trial judge and doesn't reflect what the main argument or consideration was at the time the jury arguments were made to the court. If there's any questions with respect, oh, I just wanted to add one more thing about the State Farm falsely claiming that forensics could not determine how the leak occurred. They also cite to the September 29th, 2021, denial letter. There's nothing in that letter that misrepresents the 4X report. It states that it was consistent with the report in terms of the pressure and how the water was leaking out, but also notes that Bruce Angle told State Farm that he did not know what pressure was at the house when the burst occurred. And that was documented in the claims notes at 3ER204. So nothing in that letter, nothing in the June letter, ever falsely represented what the conclusions were of 4X. If I have, I only have 20 seconds left. If anyone, if your honor has any questions, we submit that the motion should be affirmed. The judgment should be affirmed. Dardashti is not entitled to a new trial on any issue, and Dardashti is not entitled to an appraisal. Thank you, Your Honor. All right. Mr. Ehrlich, you have a few moments of rebuttal. Thank you, Your Honor. I believe that the most applicable case on the question of bad faith would be the Fadif v. State Farm case that we cite at page 8 of our reply brief. That's at 50 Calat 5th, 94. And what happened in that case is that the court of appeal found that the fact that State Farm's adjuster had reached a conclusion contrary to its expert's opinion would, when viewed in the light most favorable to the insured, allow a finding of bad faith. And that's what happened in this case. I would direct the court to the opposing counsel says, and I think the record reflects, that your client had an opportunity to have someone there whenever there was an inspection. Your client received copies of the reports that were relied upon. Is that not true? That's not true, Your Honor. Okay. Please tell me on the record where that shows. Your Honor, I don't believe that it's actually disputed. My client only received a copy of the Forex forensics report during discovery in this case. So it's true that my client was present during the site inspections, and it's true that my client retained the pipe and provided that pipe to Forex forensics, but we didn't receive the pipe. I'm sorry. We didn't receive the report until this litigation, and we certainly didn't receive access to the voicemail from Forex forensics where they described the leak as sudden until this litigation. I would direct the court to the deposition testimony of Natale, which we cite at page 13 of our opening brief. And he says that it was his understanding that Forex forensics had determined that the leak occurred suddenly. And so the attempt by State Farm to obfuscate that fact is inconsistent with the sworn testimony of their adjuster. And Mr. Natale then said that he did not agree with that determination, that in his own judgment he decided that it was gradual. Is it dispositive if it's sudden or not? Because you can have a sudden leak that is continuous and repeated, can you not? Well, Your Honor, the district court construed that as the definitive issue for coverage. They stipulated the coverage, and then they haven't appealed that coverage determination. There's not a cross-appeal here. So we've been operating as if that was how coverage was determined because that's what happened in the district court. And so I do think that here if sudden is used in the correct sense to refer to the idea of a leak in which most of the water is coming out immediately, i.e. a leak where there's no latent damage that's occurring over an extended period of time, but rather one where there's water that leaks out only for a matter of hours or perhaps at most days before it's discovered, rather than months or years, I do think that that is dispositive, Your Honor. Your time is up. Let me ask whether either of my colleagues has additional questions. Thank you both for your argument. Thank you very much. The case of Dardashti v. State Farm Insurance is submitted.
judges: SMITH, BADE, Fitzwater